No. 15,547.

THE FIRST NATIONAL BANK OF INDIANAPOLIS *v.* HEN-
DRICKS.

QUIETING TITLE.—*Lien.*—*Sale Under.*—*Paramount Lien Extinguishes
all Other Liens and Gives Clear Title.*—*When Subsequent Sale a Nul-
lity.*—In an action foreclosing liens on lot No. 3 in a certain square
in the city of Indianapolis, it was ordered, that said lot be sold and
the proceeds thereof be first applied to the satisfaction of the prior
lien thereon of A. on account of taxes and street improvements, as
herein found and adjudged, and the residue, or so much thereof as
may be necessary, shall be applied upon the judgment rendered
herein in favor of B.; that A.'s lien, by virtue of a judgment ren-
dered in his favor against the owner of said lot No. 3, prior to the
judgment herein in favor of B., he first levied upon a certain eighty
acres of land before levying upon and selling said lot No. 3. A. ordered
out a certified copy of the decree, which came to the hands of the sher-
iff May 6th, 1881, and lot No. 3 was sold under the decree, May 28th,
1881, to B. for $1,000, which he duly paid to the sheriff, and the pro-
ceeds of the sale were applied, as directed in the decree—*first*, to the
satisfaction of A.'s tax and street improvement lien; *second*, the resi-
due on B.'s judgment. And, after the expiration of a year, the land
sold, not having been redeemed, the sheriff executed a deed for said
lot to B., the value of the lot at the time being $5,000. On the 31st
day of May, 1881, A. had execution issued on its prior judgment
against said eighty acres, which was sold and the proceeds applied
on said judgment; but the judgment not being satisfied, A., on the
11th day of July, 1881, had execution issued against said lot No. 3,
which was sold to A. for $2,853.70, which was paid by receipting the
execution; and, at the expiration of a year, there being no redemp-
tion, A. received a deed from the sheriff for the lot, which A. after-
ward conveyed to C. B. brought suit to quiet her title to said lot.
C. answered by general denial and also by cross-complaint, to have
its title quieted to the same.

*Held*, that any rights which A. might have had in the controversy, re-
sulting in fixing the priority of liens and the order of sale, have
been concluded by the decree, and the decree can not be avoided
in the action to quiet title.

*Held*, also, that as A. ordered out the certified copy of the decree, and
was itself present and participating in the sale under the decree to
B., A. had full knowledge of the sale, and the sale thereafter under
its judgment was a nullity.

*Held*, also, that the first sale being made to pay the paramount lien for taxes, such sale extinguished all other liens, and gave B., the purchaser, a clear title free of all liens, on his receipt of a deed from the sheriff, and that the title to said lot should be quieted in B.

From the Marion Circuit Court.

*S. Claypool, J. W. Claypool, W. A. Ketcham, R. N. Lamb* and *R. Hill*, for appellant.

*F. Winter* and *J. B. Elam*, for appellee.

HOWARD, J.—This was a suit to quiet title to a certain lot in the city of Indianapolis, brought against appellant by appellee, who is the widow and sole legatee of Thomas A. Hendricks, deceased.

Appellant answered by general denial, and also by cross-complaint asserting ownership of said lot, and asking to have its title quieted.

From the finding of facts by the court, we take the following statement of the case:

The First National Bank of Indianapolis, No. 55, Mary McDowell and Thomas A. Hendricks, each held a mortgage upon parts of lot 17, in square 97, in the city of Indianapolis; and the Massachusetts Mutual Life Insurance Company held a mortgage upon the whole of said lot. The said bank also held a tax and street improvement lien upon all of said property, by purchase thereof at delinquent tax sale. The bank also held a mortgage upon eighty acres of land in Shelby county, Indiana, against Delos Root and wife, owners of said lot 17, in Indianapolis, and also held a personal judgment against said Delos Root, which was a lien upon all of said land and lot.

In 1878 said bank began proceedings in the Marion Superior Court to foreclose its said mortgage, making all of the aforesaid parties, and others, defendants. Afterwards said bank filed an amendment to its complaint,

asking for an adjustment and enforcement of its tax and street assessment lien on and against said lot No. 17, averring said lien to be the first and senior lien, and asking for a foreclosure and sale of the property for the payment of said tax and assessment lien. The said Thomas A. Hendricks, and other defendants, each filed answer and cross-complaint against said bank and other mortgagees, and also against the judgment creditors of said Delos Root.

The bank filed its answer to the cross-complaint of the said Thomas A. Hendricks, setting up its aforesaid judgment lien against said Delos Root, and asking that the same be protected. The cause was submitted to the court without a jury.

The said superior court found:

*First.* That, on the 15th day of October, 1874, the mortgage set up by the Massachusetts Mutual Life Insurance Company was executed by Delos Root upon the whole of said lot 17, of which he was then the owner, and that the lien of said mortgage was prior and superior to all liens and claims set up in the action by any of the parties, except, first, the mortgage of Thomas A. Hendricks as to the part of the lot covered thereby; second, the mortgage of Mary McDowell as to the part of said lot covered thereby; and, third, the tax and street assessment liens of the bank as to the whole of the lot. It was further found that after the execution of said mortgage to said insurance company, said Delos Root had subdivided and platted said lot 17 into seven lots, numbered from one to seven, and that the same ought to be sold separately.

*Second.* As to the complaint of the bank, it was found that the defendant Root executed a mortgage on the 31st day of August, 1875, to the bank, on certain parts of said lot 17, which, upon its subsequent subdivision, became

lots one and two of said subdivision, and that said mortgage was prior and superior to the liens and claims of all the defendants to said real estate, except a certain judgment lien in favor of Daniel De Camp and others, and the mortgage of the Massachusetts Life Insurance Company. It was further found that said bank had a lien upon the whole of said lot 17 for taxes and street assessments, to the amount of two thousand seven hundred and ninety-nine dollars and eighty-four cents, "which sum is a lien on all of said lot, senior and prior to that of all others." It was further found that this sum should be apportioned among the seven lots into which said lot 17 had been subdivided, and that the sum of five hundred and twenty-six dollars and forty-nine cents should be apportioned to lot number three; and that the sum so apportioned, after the payment of costs, should be first paid out of the proceeds of the sale of said lots under said decree.

*Third.* As to the cross-complaint of the said Thomas A. Hendricks, it was found that the defendants Root and wife executed a mortgage to him on the 1st day of January, 1876, on a part of said lot 17, which, upon the subdivision of said lot, became known as lot number three; that said mortgage was the first mortgage lien on said lot three, but that certain judgments, including one in favor of said bank, recovered December 5th, 1875, for four thousand seven hundred and forty-six dollars and eighty-three cents, were liens older and senior to that of said mortgage. It was further found that the lien of said bank "on account of taxes and assessments for street improvements paid, is the first and senior lien on said realty, in the amount heretofore found—five hundred and twenty-six dollars and forty-nine cents." It was further found that, except as aforesaid, the lien of all the other parties to said action upon said lot three was junior, and

subject to the said mortgage lien of said Thomas A. Hendricks. It was further found that the amount due on said mortgage to Thomas A. Hendricks was seven thousand one hundred and fifty-eight dollars and thirty-two cents, and that he was entitled to a decree of foreclosure therefor against all of the defendants to his cross-complaint, subject to the prior liens on said mortgaged realty, so found as aforesaid, and to an order of sale of said premises.

Upon these findings it was decreed:

*First.* That there was due to the Massachusetts Mutual Life Insurance Company fourteen thousand seven hundred and thirty-five dollars and forty-six cents.

*Second.* That Thomas A. Hendricks recover of said Delos Root seven thousand one hundred and fifty-eight dollars and thirty-two cents.

*Third.* That there were due said First National Bank, No. 55, certain specified amounts, secured by its said mortgage; and that there was also due said bank, on account of moneys paid out at said tax sales, the payment of taxes, and sales on account of nonpayment of street improvements, and the interest accrued thereon, the sum of two thousand seven hundred and ninety-nine dollars and eighty-four cents, and that the said sum is the first and senior lien on said lots of Delos and Kate H. Root's subdivision of said lot 17; and that of said sum the amount of lien on lot three of said subdivision is five hundred and twenty-six dollars and forty-nine cents; "and said liens are hereby enforced, and said lots ordered to be sold to pay the same."

*Fourth.* That as to the mortgage of the Massachusetts Mutual Life Insurance Company, the equity of redemption of all the defendants to the cross-complaint of said company should be foreclosed, subject only to the prior

mortgage lien of Thomas A. Hendricks as to lot number three, and of Mary McDowell as to lot number seven.

*Fifth.* The equity of redemption of all the defendants to the complaint of the First National Bank as to the parts of said lot seventeen embraced in its mortgage, should be foreclosed, subject only to the prior mortgage lien of the Massachusetts Mutual Life Insurance Company and the judgment lien in favor of Daniel De Camp and others.

*Sixth.* That the equity of redemption of all the defendants to the cross-complaint of Thomas A. Hendricks, as to lot three of said subdivision of lot seventeen, should be foreclosed, subject only to the following prior judgment liens thereon, to wit: The judgment in favor of Daniel De Camp and others, recovered March 8, 1875; the judgment in favor of William H. English, recovered September 14, 1875, and the ·judgment in favor of the First National Bank, No. 55, recovered December 7, 1875, for $4,746.82.

*Seventh.* That the mortgaged real estate was susceptible of division, and should be offered for sale in parcels; that as to lots numbered six, five, four, one, and two, the mortgage of the Massachusetts Mutual Life Insurance Company was the first and senior mortgage lien, and the first lien, except the lien of the First National Bank for taxes and street improvement assessments; that as to lot three, the mortgage of said insurance company was junior to the mortgage lien of said Thomas A. Hendricks, and, as to lot seven, was junior to the lien of said Mary McDowell; that said lots one and two represent that part of lot seventeen upon which the First National Bank, No. 55, has its mortgage lien, but that said lien is junior to the lien thereon of said insurance company and the lien of the De Camp judgment; that said lot three represents that part of said lot seventeen mort-

gaged to Thomas A. Hendricks, whose lien is senior to the mortgage lien thereon of the insurance company, the mortgage lien of said insurance company being senior to the judgment liens of De Camp, English, and of the First National Bank, by virtue of its judgment for $4,746.82, recovered December 7, 1875, and are senior liens to that of said Hendricks' mortgage; but the lien of said bank for taxes and street improvements on said lot three is senior to that of all others.

*Eighth.* That said lot seventeen should be sold by the sheriff in parcels, as subdivided, in the following order: First, lot seven; second, lot six; third, lot five; fourth, lot four; fifth, lot one; sixth, lot two, and seventh, lot three; that all of the right, title, and interest of the parties, and each of them, to the complaint of the First National Bank and to the several cross-complaints of said insurance company, Thomas A. Hendricks and Mary McDowell, should be sold by the sheriff as upon execution; that he should first sell said lot seven for the sole and only purpose of paying and extinguishing the amount of the lien thereon in favor of said bank for taxes and street assessments, and should next sell lots six, five, four, one, and two, subject to no prior liens whatever; but of the proceeds of the sale of said lots the sheriff shall first pay the prior lien of said bank thereon for taxes and street assessments, and next apply the residue of the proceeds of lots six, five, and four to the mortgage debt of the insurance company, paying the surplus, if any, upon the debt of said Root to said bank; said sheriff shall next sell said lot three, but of the proceeds of such sale he shall first pay and satisfy the amount of the prior lien thereon in favor of the bank on account of taxes and street improvements, as herein found and adjudged, and the residue, or so much thereof as may be necessary, the said sheriff shall apply upon

the said judgment rendered herein in favor of Thomas A. Hendricks.

*Ninth.* That the judgment in favor of the bank, rendered December 7, 1875, for $4,746.82, should be first levied upon said eighty acres of land in Shelby county, before levying upon and selling said lot numbered three in Indianapolis.

Said First National Bank, No. 55, ordered out a certified copy of said decree, which came to the hands of the sheriff of Marion county May 6, 1881, and all of said real estate was duly sold under the decree May 28, 1881, as follows: Lot seven, to Mary McDowell, for $1,100; lot six, to the insurance company, for $3,000; lot five, to the insurance company, for $3,000; lot one, to the insurance company, for $674.43; lot two, to the First National Bank, for $6,600.14; and lot three, to Thomas A. Hendricks, for $1,000; that the said Thomas A. Hendricks duly paid his said bid to the sheriff; that the proceeds of the sale of said lots were duly applied as directed in the decree. The proceeds of the sale of said lot three were applied first to the payment of the aforesaid tax and street assessment lien of said bank thereon, and the remainder on the claim and judgment of the said Thomas A. Hendricks, as provided in said decree; that the sale not having been redeemed, the sheriff, after the expiration of a year, executed a deed for said lot three to said Thomas A. Hendricks; that the value of the lot at the time of the sale was $5,000; that, on the 31st day of May, 1881, the bank issued execution to the sheriff of Shelby county on its judgment recovered December 7, 1875, who levied upon and sold the eighty acres in that county, referred to in the decree; that, afterwards, on the 11th day of July, 1881, the bank issued an execution on said judgment to the sheriff of Marion county for the balance then due, which was $2,580.68, and caused the same to be

levied on said lot three, and at the sale thereof the bank purchased said lot for $2,853.70, which it paid by receipting the execution. At the expiration of the year allowed for redemption, the bank received a deed from the sheriff for the lot, which it afterwards conveyed to bank No. 2556, the appellant; that appellant paid, since its purchase of said lot three, current taxes thereon to the amount of $479.84.

Upon the facts so found the court stated its conclusions of law as follows:

"As conclusions of law upon the facts found, as above, the court states and finds that the sale of the said lot three, under the foregoing decree, was a sale free from all incumbrances, and that said Hendricks became the purchaser of the same free from all incumbrances; and that after said sale, said judgment of December 7, 1875, for $4,747.82, was no longer a lien upon said lot three, and that said lot was not subject to the execution issued on said judgment under which said bank became the purchaser, and that said bank did not acquire any title by virtue of its said purchase; and, further, the court finds that said Eliza C. Hendricks, as sole legatee of Thomas A. Hendricks, is, upon the facts found, the legal owner of said lot three, as against said bank, and ought to have her title quieted against said bank.

"*Second.* The court further finds that the said bank ought to recover of and from said Eliza C. Hendricks the money paid out by said bank for taxes on said lot three, together with interest thereon amounting in all to $479.84.                    LIVINGSTON HOWLAND, *Judge.*"

Exceptions to the findings and conclusions of law were duly entered by both parties, after which judgment was rendered in accordance with the findings.

It is clear that any rights which appellant might have

had in this controversy have been concluded by the decree in the superior court. That decree can not be avoided in this action, and we do not understand that appellant seeks to avoid it. Bank No. 55, through which appellant asserts title, was a party to that decree, and if it failed to secure any right in that decree, which is now contended for, it is too late to remedy the defect. The superior court found the lien of the bank's judgment on lot three to be superior to that of the mortgage of Thomas A. Hendricks on the same lot, but no pleading carried a judgment on this finding into the order of sale; but the order was, and properly so, under the pleadings, out of the proceeds to first pay the amount of the senior lien in favor of the bank on account of taxes and assessments, and to apply the residue, so far as necessary, upon the judgment in favor of Thomas A. Hendricks.

Appellant contends that the decree, in effect, treated the bank's judgment lien as if prior to its tax lien, and gives as a reason for this contention that the right was reserved to the bank to sell lot three on execution after having sold the Shelby county land. This reasoning might be good if the bank had not already sold lot three under the decree to pay its tax lien, before selling the Shelby county land. The bank not only ordered out the certified copy of the decree, but was itself present and participating in the sale under the decree. Appellant had full knowledge of this sale, and the sale under its judgment thereafter was a nullity. *State, ex rel.*, v. *Salyers*, 19 Ind. 432.

Had the bank done that which seems to be implied in the decree, to wit: First sold the Shelby county land and then ordered a sale of lot three under the decree, there would be more equity in its contention. If it be said that in such a case, in order to secure its judgment lien, the bank would have been obliged, after paying the

tax lien, to apply of the residue of the proceeds so much as would be necessary to pay the Hendricks mortgage lien, before any payment could be made on its own judgment lien; it may be answered that this was the very course provided for in the decree, and the bank having been a party to the decree can not now make complaint. Indeed, one not a party could not make such collateral attack against the decree. In consenting to the decree of sale, as made, and in causing the order of sale to issue for the payment of its tax lien, it would seem that the bank, by its own action, subordinated its judgment lien to the mortgage lien of appellee, and can not now be heard to complain. *Michie* v. *Planters' Bank*, 4 How. 130, 34 Am. Dec. 112.

Appellant's contention might also be good if the certified copy of the decree had been ordered out, by Thomas A. Hendricks himself, to sell the lot on the foreclosure of his mortgage under his cross-complaint. The sale was not made on his order, nor was the payment of a part of his judgment anything more than an incident of the sale under the decree, as ordered by the bank to pay its tax lien. The sale was not made to pay his mortgage lien, but to pay the bank's tax lien, the lien senior and paramount to all the liens in the case. The sale under that first and paramount lien extinguished all other liens, and gave to the purchaser a clear title free of all liens, on his reciving a deed from the sheriff. *McMillan* v. *Richards*, 9 Cal. 365.

Appellee's title is not only through a lien superior to appellant's judgment lien, but it is through a tax lien superior and paramount; and this court, in the case of *Jenkins* v. *Newman*, 122 Ind. 99, has expressly decided that one claiming title through a sale on a judgment can not maintain an action in ejectment and to quiet title

The First National Bank of Indianapolis v. Hendricks.

against one claiming through a sale on foreclosure of a lien for taxes.

There was no error in the conclusions of law on the facts found by the court.

Judgment affirmed.

Filed Jan. 24, 1893.

## ON PETITION FOR A REHEARING.

HOWARD, J.—In a very able and elaborate petition and brief for rehearing, counsel for appellant endeavor to shield their client from the consequences of the fatal defect in the decree of the superior court. It is admitted that the court found the lien of the bank judgment to be superior to the lien of appellee's mortgage, and it is contended that the court might therefore have decreed that lot three should be sold subject to the judgment, or at least might have decreed that the proceeds of the sale should be applied to the payment of the liens in the order of their priority; and reference is made to the order requiring that the Shelby county lands should be first sold before levying on lot three under the bank judgment, as showing the intention of the court that the sale of lot three under the decree should be made subject to the lien of the judgment. But we are not here concerned with what the court could have done, nor even with what the court intended to do, but only with what the court actually did.

Counsel go so far as to say that in the adjustment of the equities of the case the bank's lien for taxes was made subordinate to its judgment lien. An examination of the record will not bear out this contention. The taxes due the bank were found by the court to be $2,-799.84, which sum the court expressly declared to be the ''first and senior lien on said lots from one to seven,'' * * ''and that of said sum the amount of lien on each lot

is as follows:" * * "on lot three, $526.49," * * "and said liens are hereby enforced, and said lots ordered to be sold to pay the same."

As counsel say, the findings and decree of the superior court were exceedingly elaborate, full, and complete, even to excess, covering sixty-four pages of the record; and it would seem that the court took ample time and space to say what it intended to say.   Finally, after ordering that all the land sold under the decree "be sold by the sheriff of said county of Marion, Indiana, as upon execution, said sale to be without any relief from valuation or appraisement laws," the court next proceeds to decree the separate sale of the several tracts, ordering the proceeds applied in each case to the payment of liens as therein severally stated.

The decree for the sale of lot three is in the following words:

"And said sheriff shall next sell said lot number three (3), but of the proceeds of said sale, he shall first pay and satisfy the amount of the prior lien thereon in favor of the plaintiff, on account of taxes and street improvements or assessments paid by plaintiff, as herein found and adjudged; and the residue, or so much thereof as may be necessary, the said sheriff shall apply upon the said judgment rendered herein in favor of Thomas A. Hendricks against the defendant Delos Root."

If, as counsel insist, there was a sufficient pleading to protect the bank's judgment, it is very clear that no such pleading carried the finding of the court as to the superiority of the judgment lien into the decree and order of sale; for, as a matter of fact, as shown above in the words of that order of sale, no judgment on such finding was carried into the order of sale.

We have to look to what was done by the court, not to what might have been done.   It is vain now to say that

the court might do what is usual in such decrees, have ordered that the proceeds of sale be applied to the payment of the liens in the order of their seniority, or might have ordered the sale made subject to the lien of the bank's judgment.

The sufficient answer to this is, that the court did not do so. Counsel now admit that "the rights of all parties interested in lot 17 were fixed and established by the decree providing for its sale in the different parcels into which it had been subdivided, and the application of the proceeds of such sale." To that we agree, and all parties must abide by the result as made in the order of the court and carried out by the sheriff.

As to the actual equities of this result, we think they are as nearly harmonized as possible. Granting that the lot was worth $5,000, it stood to appellee, after paying the bank's tax lien of $526.49, as netting $4,473.51. Appellee's judgment was found to be $7,158.32; on this was applied the surplus of the purchase-price paid for the lot, $473.51, leaving yet due appellee, $2,201.30. After appellant sold the Shelby county lands, there remained due on her judgment $2,580.68. The net losses of appellant and appellee are therefore very nearly equal. So, whether we look to the wording of the decree and order of sale, and the proceedings that followed, or whether we confine our attention to the equitable results that followed, there seems no reason to change the opinion of the court already rendered.

The petition for a rehearing is overruled.

Filed May 19, 1893.